**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**FREDERICK M. FUSCO,**

          **Plaintiff,**

      **v.**                                       **No. 03-CV-1487 (TJM/RFT)**

**THE CITY OF RENSSELAER, NEW YORK;**
**MARK G. PRATT**, individually and in his capacity
as Mayor of the City of Rensselaer, New York;
**BONNIE LEE HAHN**, individually and in her capacity
as member of the Common Council and Board of
Public Safety of the City of Rensselaer, New York;
**ALBERTINE FELTS**, individually and in her capacity
as member of the Common Council and Board of
Public Safety of the City of Rensselaer, New York;
**PATRICIA JACKSON**, individually and in her capacity
as member of the Common Council and Board of
Public Safety of the City of Rensselaer, New York;
**BRIAN STALL**, individually and in his capacity
as member of the Common Council and Board of
Public Safety of the City of Rensselaer, New York; and
**ROBERT MOONEY**, individually and in his capacity
as Police Sergeant of the City of Rensselaer, New York,

                     **Defendants.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

## I.  INTRODUCTION

     On January 12, 2003, Plaintiff Frederick M. Fusco commenced an action pursuant to 42

U.S.C. § 1983 alleging various civil rights violations arising during the course of his employment as

Chief of Police for the City of Rensselaer, New York. See Compl. [dkt. # 1]. On January 8, 2004,

Fusco filed an Amended Complaint slightly amending his allegations. See Am. Compl. [dkt. # 4].

Following the various defendants' motions to dismiss the Amended Complaint, this Court issued a

Decision and Order dated August 13, 2004 dismissing the case in its entirety but giving Plaintiff

leave to replead a Fourteen Amendment equal protection claim and a First Amendment retaliation

claim. See 8/13/04 Decision and Order [dkt. # 58].[1]  On September 13, 2004, Plaintiff filed a

Second Amended Complaint repleading these two claims. See 2nd Am. Compl. [dkt. # 59]. Presently

before the Court are: (1) Defendants City of Rensselaer, Mark Pratt, Brian Stall, Bonnie Hahn,

Patricia Jackson, and Albertine Felts' (collectively "City Defendants") motion pursuant to FED. R.

CIV. P. 8(a), 12(b)(1), 12(b)(6), 12(c), and 56 seeking to dismiss the claims against them in the

Second Amended Complaint [dkt. # 71]; and (2) Defendant Robert J. Mooney's motion pursuant to

FED. R. CIV. P. 8(a) and 56 seeking to dismiss the claims against him in the Second Amended

Complaint [dkt. # 73]. After the Court permitted the parties a lengthy adjournment to explore

settlement, Plaintiff filed his opposition to the motion [dkt. # 81-# 83].  The matter is now fully

submitted.  For the reasons that follow, both motions are granted and the action is dismissed.

## II.  STANDARD OF REVIEW

All defendants moved, at least in the alternative, for summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure. The Notices of Motion and Defendants' arguments in

support thereof clearly put Plaintiff on notice that Defendants seek a substantive evaluation of

Plaintiff's claims under the Rule 56 standard. Plaintiff responded to the motions by submitting his

own affidavit [dkt. # 84] and responding Local Rule 7.1(a)(3) Statements [dkt. # 82 & # 83].

---

[1] Familiarity with this Decision and Order is presumed.

Although Plaintiff argues that additional discovery is required before subjecting the case to a Rule 56 analysis, his arguments do not meet the standard set forth in FED. R. CIV. P. 56(f) and Hudson River Sloop Clearwater, Inc. v. Department of the Navy, 891 F.2d 414, 422 (2d Cir. 1989).[2] Further, Plaintiff responds with arguments addressed to matters beyond the pleadings. Accordingly, the Court analyzes both motions under the Rule 56 standard.

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the Court must view the

---

[2] In order to defeat a motion for summary judgment under FED. R. CIV. P. 56(f) for lack of discovery, the party's counsel must submit an affidavit detailing: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Hudson River Sloop Clearwater, Inc., 891 F.2d at 422. No such affidavit was submitted. Further, and as discussed more fully in the text, *infra*, the motions turn on material questions of fact - or the lack thereof - that are within Plaintiff's knowledge or that could have been obtained without discovery.

evidence in the light most favorable to the non-moving party and draw all reasonable inferences in

his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly

supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in

his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on

conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d.

Cir. 1998). As one legal treatise has succinctly stated, summary judgment requires the parties to "put

up or shut up." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Fleming

James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure 150 (2d ed. 1977)).

The Local Rules of the Northern District provide a mechanism for the efficient resolution of

summary judgment motions. See N.D.N.Y.L.R. 7.1(a)(3).[3]  This mechanism places the onus on the

parties to marshal the evidence that either supports, or defeats, the motion. Monahan v. New York

City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(The Court's Local Rules require the

parties "to clarify the elements of the substantive law which remain at issue because they turn on

---

[3] Specifically, the Local Rule 7.1(a)(3) require a party moving for summary judgment to submit a "Statement of Material Facts" which

> shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits.

N.D.N.Y.L.R. 7.1(a)(3). Once such a statement is submitted, the party opposing summary judgment

> shall file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Id. (emphasis in original).

4

contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted); see also Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted).

        In the instant case, Defendants have submitted Local Rule 7.1 Statements of Material Facts ("7.1 Stat.") that contain specific citations to the record indicating where each fact is purportedly established. See dkt. # 71-35 (City Defendants' 7.1 Stat.); # 73-4 (Def. Money's 7.1 Stat.). In opposition, Plaintiff submitted mirrored 7.1 Statements that either admit or deny the allegations in the Defendants' 7.1 Statements, but, with one exception in each responsive 7.1 Statement, that provide no citations to the record.[4]  That being the case, all properly supported factual allegations contained in Defendants' 7.1 Statements are deemed admitted for purposes of this motion. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts); Meaney v. CHS Acquisition Corp., 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's

---

    [4] The one exception in each of Plaintiff's 7.1 Statements is a citation to the verified Amended Complaint contesting whether Plaintiff previously stated that he was "happy and content" in his office. See dkt. # 82, ¶ 9; dkt.# 83, ¶ 9.

response "set forth *no* citations – specific or otherwise – to the record")(emphasis in original);

McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy,

J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted

by Plaintiff to be admitted"); Osier v. Broome County, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999)

(McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff

submitted thirteen pages of purported facts without any indication where those facts can be located

in the record").

## III.  FACTUAL BACKGROUND

Plaintiff contends that, after he filed disciplinary charges against certain City police officers,

Defendants began a conspiracy to remove him from his position as Police Chief.  This conspiracy

allegedly involved harsh public criticism, false accusations that Fusco investigated a homicide scene

while intoxicated, false statements that the City had overpaid Fusco, and false statements to the City

Board of Public Safety that the Rensselaer District Attorney was investigating Fusco.  Fusco also

alleges that the Defendants were rude and unprofessional to him, hired a special counsel to find a

way to terminate his employment, usurped his authority as Police Chief, and ignored his

communications with City officials.

The relevant uncontested facts on this motion establish the following. Chief Fusco is, and

was at all times pertinent to this action, the Police Chief in the City of Rensselaer. City Defs. 7.1

Stat. ¶ 1.  The Police Chief's primary duty is to control and supervise the day to day operation of the

Police Department. Id. ¶ 5. The Police Chief can only be disciplined after the proffer of written

charges and a trial before the Board of Public Safety.  Id. ¶ 8.

In November of 2001, Mark Pratt was elected the Mayor of the City of Rensselaer and

became a member of the Board of Public Safety. Id. ¶ 2.  At times relevant to this lawsuit, Brian

Stall; Bonnie Hahn; Albertine Felts; and Patricia Jackson were members of the City of Rensselaer

Common Council, and Stall and Hahn were members of the Board of Public Safety. Id. ¶ 3.  The

Common Council of the City of Rensselaer is in charge of funding the Police Department, and is

authorized to conduct investigations; hold hearings; and consider, discuss and pass legislation. Id. ¶

6.  The Board of Public Safety is the entity in the City that oversees and administers the Police and

Fire Departments. Id. ¶ 4. Robert J. Mooney was employed by the City of Rensselaer Police

Department between October 4, 1987 and December 2, 2002. Mooney 7.1 Stat. ¶¶ 35-36. He was

appointed Sergeant in September, 1995 and maintained that rank until he resigned in 2002. Id. ¶ 36.

        In June 2001, a female City of Rensselaer Police Officer alleged that she was sexually

harassed by two fellow City Police Officers . Id. ¶ 13.  The City, through the Police Chief, brought

disciplinary charges against the officers involved. A lawsuit brought by the victim was settled for

$200,000.00. Id.  On October 5, 2001 Plaintiff filed a disciplinary charge against Defendant

Mooney for sleeping on duty. Mooney 7.1 Stat. ¶ 37.  A hearing was never conducted in connection

with the charge against Mooney as it remained pending in December 2002 when Mooney resigned.

Id.  Prior to the November 2001 election,  the Union then representing the rank and file police

officers in the City of Rensselaer issued a vote of "no confidence" in the Police Chief.  City Defs.

7.1 Stat.  ¶ 16.

        After Pratt was elected Mayor, the Board of Public Safety took a more active role in

supervising the Police Department. City Defs. 7.1 Stat. ¶ 10.  On or about December 5, 2001, the

City Council voted 7-1 to appoint John Hicks as Special Counsel to investigate and advise the

Common Counsel on "what role [it could] take and how it [was] empowered to respond to the

controversies which exist[ed in the Police Department] with [*sic*] its rights delineated in the Charter and Statutes in overseeing the Police Department." Id. ¶ 29.

Shortly after the 2001 election, Sergeant Mooney approached Mayor Pratt to report his belief that the Police Chief was intoxicated while on duty at a murder investigation and provided a written statement of his allegations. Id. ¶ 17; Mooney 7.1 Stat. ¶ 37. After consultation with its Labor Counsel Elayne Gold and Corporation Counsel John Hicks, the Board of Public Safety voted to place the Police Chief on paid Administrative Leave while the allegation was investigated. City Defs. 7.1 Stat. ¶ 18; Mooney 7.1 Stat. ¶ 40.  The investigation lasted approximately three weeks and no charges were ever filed against the Chief arising out of this incident. City Defs. 7.1 Stat ¶ 19.  In fact, the Police Chief has not been disciplined, demoted or suspended without pay during his employment as the Police Chief.  Id. ¶ 7.

Subsequently, Plaintiff filed disciplinary charges against Mooney alleging that Mooney made unsubstantiated and uncorroborated allegations concerning the Chief's condition on the night of the murder investigation. Mooney 7.1 Stat. ¶ 43.[5]  After an arbitration proceeding in which 30 witnesses were called, the arbitrator issued a written decision in which he concluded that Mooney "had sufficient grounds to entertain a good faith belief that the policy of the department on alcohol had been violated" by Plaintiff and that Mooney "was justified in reporting his observations to the Mayor for further investigation." Id. at ¶ 44.   Following one of the hearing sessions with the arbitrator on the Mooney case, Mooney's union representative held a news conference and disclosed testimony unfavorable to the Police Chief. City Defs. 7.1 Stat. ¶ 21. Mayor Pratt did not make a public statement. Id.  This angered the Police Chief who stated, in sum or substance to Mayor Pratt:

---

[5] Although Plaintiff provides no citation to the record, he denies that he "personally filed or directed the filing of any disciplinary charges against Mooney concerning this matter."  Plf. 7.1 Stat. ¶ 43 [dkt. # 82].

"I will not tolerate this anymore;" "This is corruption and it's going to end;" and "I'm sick of you violating my civil rights over and over again; it's got to stop." <u>Id.</u>  The Police Chief also made his own statement to the press. <u>Id.</u>

On or about September 4, 2002, the City Council, by a vote of 8-1, adopted a resolution of no confidence in the Police Chief.  <u>Id.</u> ¶ 30.  In November 2002, the City Charter was amended to increase the size of the Board of Public Safety from three members to five members, and a legal challenge to that amendment was rejected. <u>Id.</u> ¶ 22.  On or about August 4, 2003, the City Council voted 9-0 to adopt a budget which approved money for a Commissioner of Public Safety.  <u>Id.</u> ¶ 32.  On or about May 15, 2002, the City Council voted 9-0 to allow officers to engage in outside employment on notice to the Police Chief. <u>Id.</u> ¶ 31.

On May 7, 2003, the City Council voted 10-1 to approve the commencement of a Declaratory Judgment action concerning the Police Chief's pay.  <u>Id.</u> ¶ 27.  The City had commenced, prior to the instant action, a state Declaratory Judgment action, and had moved for summary judgment in that action.  <u>Id.</u> ¶ 28.  Prior to 2004, the City's comp-time policy did not expressly provide for the rolling over or cashing out of comp-time.  <u>Id.</u> ¶ 23. On July 24, 2004, the City Council voted 9-1 to cap compensatory time at 104 hours.  <u>Id.</u> ¶ 24.  On August 4, 2004, the City council voted 6-1 to allow employees who have more than 104 hours to retain their comp-time and be allowed to use it (but not cash it out), but they cannot accrue additional compensatory time until their comp-time levels go below 104 hours. <u>Id.</u> ¶ 25.  The two comp-time resolutions applied to all employees, not merely the Police Chief. <u>Id.</u> ¶ 26.

During 2004, the Police Chief attended five of the 26 meetings of the Board of Public Safety.  <u>Id.</u> ¶ 33.  At one meeting with the Board of Public Safety, Plaintiff accused Bonnie Hahn of

leaking information, which she denied, and she told Plaintiff that he was "full of shit." Id. ¶ 34. In the Amended Complaint, Plaintiff attested that "[b]ut for the defendants' unlawful conduct, [he] is happy and content in his municipal employment and intends to complete his professional career as Chief of Police." Am. Compl. ¶ 356.

## IV.  DISCUSSION

### A.  Hostile Work Environment

The Second Amended Complaint contains two causes of action. The first, brought pursuant to the Fourteenth Amendment to the United States Constitution, alleges that Plaintiff was denied equal protection of the laws by defendants' conduct.  In this regard Plaintiff contends that Defendants engaged in a "conspiratorial campaign to unlawfully discharge him or coerce him to resign from office ... [and] subjected him to a malicious campaign of harassment and adverse employment action, singularly from all other public officers or supervisors...." Plf. Mem. L. p. 23. The second, brought pursuant to the First Amendment to the United States Constitution, alleges that Defendants retaliated against Plaintiff because he exercised his First Amendment rights to engage in protected free speech. Id. pp. 13-22.  The claimed retaliation was the creation of a hostile work environment, id. pp. 6-9, 13-15, 18-19; the claimed  protected free speech was Plaintiff's levying of disciplinary charges against the two City police officers for sexual harassment and the unresolved disciplinary charge against Defendant Mooney.[6] Id. pp. 5, 20-21; 2nd Amend. Compl. ¶¶ 39, 46.

---

[6] Plaintiff's Second Amended Complaint and Memorandum of Law are long on generalizations and short on specifics.  For instance, in his Memorandum of Law he argues that defendants "subjected him to a hostile work environment in retaliation for the disciplinary charges he filed against police officers guilty of misconduct." Pltf. Mem. L. p. 5. While he uses the plural "officers," he stops short of identifying the particular disciplinary charges that he is referring to as the "protected speech" forming the basis of his First Amendment Retaliation claim.  The only disciplinary charges filed by Plaintiff supported in the current record consist of (1) the June 2001 charges against the two officers who were charged with sexually harassing Officer Terri Hansen;  (2) the unresolved disciplinary charge against Mooney asserting that Mooney was sleeping on the job; and (3) the unsuccessful disciplinary charges filed against Defendant

(continued...)

As indicated, both causes of action proceed on the premise that Defendants, through their actions, imposed an adverse employment action on Plaintiff by the creation of a hostile work environment.  However, as the Court pointed out in the August 13, 2004 Decision and Order,  the fact that Plaintiff did not like the criticism that others in the community (including some public officials) leveled against him does not, alone, amount to an adverse employment action. See Diaz v. Weill Med. Ctr. of Cornell Univ., 2004 WL 285947, at *21 n. 30 ("[I]t is well-settled that a negative evaluation alone is not an adverse employment action."); Jenkins v. New York State Dep't of Corr., 2002 WL 205674, at *6 (Employer's reprimand for plaintiff's use of an unauthorized parking space may have caused plaintiff embarrassment, but he "does not allege that the reprimand had any adverse impact on the actual performance of his duties."); Islamic Soc'y of Fire Dep't Pers. v. City of New York, 205 F. Supp.2d 75, 85 (E.D.N.Y. 2002)("[C]ourts in this circuit have universally rejected attempts by plaintiffs to show an adverse employment action based simply on the plaintiff's personal feelings about the employers actions.")(citing cases).  As further pointed out on the Rule 12(b)(6) motion,

> [a] plaintiff bringing a hostile work environment claim must ultimately demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer. [Feingold v. New York, 366 F.3d 138, 151 (2d Cir. 2004)].  The Amended Complaint, with its numerous alleged conspiracies and contentions of public and private statements against Fusco's continued service as Chief of Police, yields the nearly unmistakable impression that his grievance is not with the actions of the City *qua* employer, but with the various defendants in the exercise of *their* First Amendment rights. . . .

While Plaintiff uses the legal conclusion throughout the Amended Complaint that he

---

[6](...continued)

Mooney for Mooney  reporting to the Mayor that Plaintiff was intoxicated at a murder investigation.  Plaintiff denies instituting the third of these disciplinary charges. See Fusco Aff. ¶ 4. Inasmuch as Plaintiff denies instituting this charge or directing anyone to file the charge, he cannot simultaneously contend that the institution of the charge was protected speech *that he engaged in.*

11

was caused to suffer "adverse employment action," it is unclear what conduct he contends affected the terms and conditions of his employment as opposed to affecting his reputation or his feelings.  Further, assuming *arguendo* that the City of Rensselaer (acting through its mayor or legislative body) could inflict an adverse employment action upon Plaintiff, there is little if any factual basis to conclude that the majority of the defendants - even if they wanted to retaliate - played any role in the "adverse employment actions" that Plaintiff supposedly endured. See [Deters v. Lafuente, 368 F.3d 185, 189 (2d Cir. 2004)]("[I]ntent is not an issue where, as here, defendants had no authority to act. [The Mayor's] and [the Police Chief's] lack of authority means that they could not have retaliated against the plaintiffs in the manner complained of, and plaintiffs have pointed to no other evidence of retaliation.").

8/13/04 Decision and Order,  pp. 24-25.

Plaintiffs' Second Amended Complaint and his opposition to the instant motion do little to fill the void that existed in the Amended Complaint.  In this regard, Plaintiff fails to identify severe or pervasive action *within the workplace* taken by the defendants *qua* employer that altered the terms and conditions of his *employment*.  Rather, most (if not all) of  the conduct Plaintiff complains of by Defendants, when boiled to its core, is either public criticism directed at him (and, therefore, is conduct protected by the First Amendment, see  Kaluczky v. City of White Plains, 57 F.3d 202, 210 (2d Cir. 1995)), or constitutes legitimate governmental scrutiny of him.  While Plaintiff cloaks his challenge to his detractors' criticism as "unlawful conduct," see Am. Compl. ¶ 356, and asserts that it made his "life a living hell,"  Fusco Aff. ¶ 5, he merely makes broad, conclusory allegations that he suffered an adverse change in the conditions of *his employment*.  Here, the uncontested facts reveal little in the way of changes in job duties or responsibility, and much in the way of public criticism that Plaintiff simply did not like.

Still further, the factual basis for the asserted "hostile work environment" is undermined by Plaintiff's own sworn statement that "[b]ut for the defendants' unlawful conduct, [he] is happy and content in his municipal employment and intends to complete his professional career as Chief of

Police." Am. Compl. ¶ 356.   While the Plaintiff need not establish that the harassment arose to such a severe level that he felt compelled to resign,  Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003), he must produce sufficient evidence from which a fair minded juror could conclude that the defendants intentionally made the conditions in the workplace both objectively and subjectively hostile, and that the harassment was severe and/or pervasive. Fairbrother v. Morrison, 412 F.3d 39, 48 (2d Cir. 2005);  Feingold, 366 F.3d at 149; see Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004)("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of ... the Equal Protection Clause").  Given Plaintiff's attestation that he was (at the time he filed his action) happy and content in his position, together with the uncontested fact that Plaintiff has not been disciplined, demoted or suspended without pay during his employment as the Police Chief, no reasonable fact finder could conclude that the Defendants' actions, either singularly or *en toto*, created conditions so severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive working environment. Therefore, both claims fail on this essential element.  Nevertheless, assuming *arguendo* that Plaintiff could establish the creation of a hostile work environment, both claims fail on other essential elements as discussed below.

## B. Equal Protection "Class of One" Claim -

The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons alike. Nielson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)(quoting Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)). Although most Equal Protection Clause claims are brought by members of protected or suspect classes,  membership in such a class is not essential and a plaintiff may proceed on a "class of one"

13

theory. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  In this regard, a plaintiff may

state a "class of one" equal protection claim by alleging that he has been treated differently from

similarly situated individuals. Id.   Plaintiff proceeds on the Olech "class of one" theory.  In order to

succeed on such a claim, Plaintiff must show that the treatment he received was intentional and

without any rational basis. Id.

Claims based on a "class of one" require a plaintiff to show an extremely high level of

similarity between himself and a comparable person. Nielson, 409 F.3d at 104.  The Second Circuit

requires a plaintiff and the comparable person be "prima facie identical in all relevant respects." Id.

at 105 (quoting Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)).

> The Second Circuit explained that the reason for demanding this high standard of
> similarity in Olech claims is that the "existence of persons in similar circumstances
> who received more favorable treatment than the plaintiff is offered to provide an
> inference that the plaintiff was intentionally singled out for reasons that lack any
> reasonable nexus with a legitimate governmental policy." Nielson, 409 F.3d at 104.
> In effect, "[t]he similarity and equal protection inquiries are ... virtually one and the
> same in ... a 'class of one' case." Id.
>
> Accordingly, the Second Circuit restated the requirements that an Olech plaintiff
> must establish as follows:
>
>> (i) no rational person could regard the circumstances of the plaintiff to differ from
>> those of a comparator to the degree that would justify the differential treatment on
>> the basis of a legitimate government policy; and (ii) the similarity in circumstances
>> and difference in treatment are sufficient to exclude the possibility that the
>> defendant acted on the basis of a mistake.
>
> Nielson, 409 F.3d at 105.

Blackhawk Security, Inc. v. Town of Hamdon, Conn., 2005 WL 1719918, at *3 - *4 (D. Conn. July

22, 2005).

In the instant case, Plaintiff has failed to identify any person that is substantially similar to

him, let alone someone who is "prima facie identical in all relevant respects," and has failed to

identify the dissimilar treatment between himself and his hypothetical comparator(s). Instead, he makes broad, conclusory allegations that he "was treated differently from all other tenured supervisory municipal police officers and officials." Plf. Mem. L. pp. 21-22; see 2nd Amend. Compl. ¶ 185 (Plaintiff was "intentionally treated differently from other police officers, a similarly situated police chief or other municipal department heads."). Such unsupported allegations are insufficient to withstand Defendants' summary judgment challenge.  Plaintiff's role as a policymaking head of the Rensselaer Police Department substantially distinguishes him from other Rensselaer police officers, municipal workers, and even police agency heads of other municipalities.  Rank and file police officers are not charged with overseeing an entire department, investigating departmental abuses, or interacting with the municipal government.  Department heads of other municipalities are not "*prima facie* identical" because each municipality contains its own unique problems and politics. The issue is not whether Defendants' treatment of Plaintiff was proper under the circumstances, see Bizzarro v. Miranda, 394 F.3d 82, 88-89 (2d Cir. 2005)("*Olech* does not empower federal courts to review government actions for correctness."), but whether Plaintiff has provided sufficient evidence from which a reasonable finder of fact could conclude that "no rational person could regard the circumstances of the plaintiff to differ from those of [the] comparator to the degree that would justify the differential treatment on the basis of a legitimate government policy." Nielson, 409 F.3d at 105; see Blackhawk Security, 2005 WL 1719918, at *5 ("[T]he relevant question is whether [plaintiffs] and [the Comparator] are so similar that *no rational person* could regard their differential treatment as justified on the basis of a legitimate governmental policy.")(citing Nielson, 409 F.3d at 105)(emphasis is original).   Because Fusco has provided no evidence of sufficient similarity, an essential element of his "equal protection claim" is lacking.  Thus, the Court

15

concludes that based on the undisputed facts of this case, no rational jury could find that Plaintiff

has satisfied the first prong of the <u>Nielson</u> test. <u>See</u> <u>Blackhawk Security</u>, 2005 WL 1719918, at *5

("On the undisputed facts, the Court concludes no reasonable juror could find that Plaintiffs have

satisfied this onerous standard.")(citin<u>g Nielson</u>, 409 F.3d at 105) .

### C. First Amendment Retaliation Claim

Plaintiff's First Amendment retaliation claim also fails on a substantive element. To

establish such a claim, Plaintiff must show that he spoke on matters of public concern, <u>Connick v.</u>

<u>Myers</u>, 461 U.S. 138, 146 (1983), and that the employer took an adverse employment action because

of the speech. <u>White Plains Towing v. Patterson</u>, 991 F.2d 1049, 1058 (2d Cir. 1993), <u>cert. denied</u>,

510 U.S. 865 (1993); <u>see</u> <u>Cobb v. Pozzi</u>, 363 F.3d 89, 102 (2d Cir. 2004)(To establish a prima facie

case of First Amendment retaliation, a public employee must establish that (1) his speech addressed

a matter of public concern; (2) he suffered an adverse employment action; and (3) there was a causal

connection between the speech and the adverse employment action.). Thus, the initial inquiry is

whether the speech was on a matter of public concern and, therefore, protected by the First

Amendment.

Whether speech is protected depends on its context, form and content. <u>Connick</u>, 461 U.S. at

147-48. Speech by a public employee is on a matter of public concern, and protected by the First

Amendment, if it relates "to any matter of political, social, or other concern to the community." <u>Id.</u>

at 146 . "However, speech that relates primarily to matters of personal interest or internal office

affairs, in which the individual speaks as an employee rather than as a citizen, will not support a

First Amendment retaliation claim." <u>Kelly v. City of Mount Vernon</u>, 344 F. Supp.2d 395, 402

(S.D.N.Y. 2004). Speech that arises in the usual course of a public official's duties is generally not

protected. See Cahill v. O'Donnell, 75 F. Supp.2d 264, 273 (S.D.N.Y. 1999)("A communication by an employee to an employer in the course of the employee's normal duties, in routine form, and containing standard contents, is not likely to address a matter of public concern.").   As the Supreme Court has stated: "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case." Connick, 461 U.S. at 147-49.

While the determination of whether speech is protected "may be somewhat fact-intensive, it presents a question of law for the court to resolve." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003). As indicated above, Plaintiff's purported protected speech consisted of bringing disciplinary charges against two City police officers for sexual harassment, and bringing disciplinary charges against Defendant Mooney for purportedly sleeping on the job.  Neither of these incidents amounted to matters of public concern.  In this regard, it is well settled that a single claim of employment discrimination does not, in itself, constitute protected speech. See Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993)(finding that employee's complaints of sex discrimination did not implicate matters of public concern because they "were motivated by and dealt with her individual employment situation"); Walker v. New York City Transit Auth., 2001 WL 1098022, at *12 (S.D.N.Y. Sept. 19, 2001)(rejecting the argument that all complaints relating to race or gender discrimination implicate matters of public concern).  Similarly, speech about individual or isolated problems within a police department, or one of its officers, are not matters of public concern. Cahill, 75 F. Supp.2d at 272 (internal office affairs are not matters of public concern.).  While a claim of systemic or endemic problems in a public department might rise to the level of protected public speech, see Collins v. Christopher, 48 F. Supp.2d 397, 408 (S.D.N.Y. 1999)(collecting cases),

17

Plaintiff has failed to marshal evidence indicating that his speech was intended to address anything more than the isolated events concerning the conduct of the three employees in issue. Indeed, despite that there was some turmoil within the Police Department during the time that the events in issue unfolded, there is no indication that there was endemic sexual harassment or sleeping on the job by officers, or that Plaintiff intended his "speech" on these incidents to address endemic or systemic problems in the Police Department.  In fact, in Plaintiff's affidavit in opposition to the pending motion, he denies that there were problems in the Police Department. See Fusco Aff. ¶¶ 16-17.

Further, as the Chief of Police, Plaintiff was responsible for levying disciplinary charges against officers who transgressed the rules of the work place.  The uncontested facts on this motion indicate that the context in which Plaintiff "spoke" on these issue was wholly within the scope of his normal duties as the Chief of Police and not on a matter of public concern. See Kelly, 344 F. Supp.2d at 403 (finding that a police officer's investigations into illegal firearms which involved the mayor's son and the child of another police officer were not protected speech because they arose during a normal police investigation).  Thus, the claim arising from Plaintiff's levying of disciplinary charges against Police Officers fails on the first prong of the prima facie case.

To the extent that Plaintiff's First Amendment retaliation claim is based upon the vague contention that Defendants' retaliated against him because he made "public comments about the defendants' retaliatory and discriminatory actions against him," Plf. Mem. L. p. 21 (emphasis added), the claim also fails to meet the public concern test.  It is well settled that issues of personal importance to a public employee are not matters of public concern. Connick, 461 U.S. at 149; see Munafo v. Metropolitan Transp. Auth., 2003 WL 21799913 at *8 (E.D.N.Y.  Jan. 22,

2003)(Generally, "an employee's protests about the conditions of his or her own employment situation do not rise to the level of public concern necessary for First Amendment protections to attach."). "The fundamental question is whether the employee is seeking to vindicate personal interests or bring to light a matter of political, social, or other concern to the community." Collins, 48 F. Supp.2d at 409. "'Even as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight.'" Cahill, 75 F. Supp.2d at 273)(quoting White Plains Towing Corp., 991 F.2d at 1058). Plaintiff has failed to present any evidence from which a reasonable fact finder could conclude that his "public comments about the defendants' retaliatory and discriminatory actions against him" were made for any reason other than to further his own situation. Accordingly, to the extent the First Amendment retaliation claim is based upon speech about Defendant's treatment of Plaintiff, it too fails under the first prong of the prima facie case.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment are **GRANTED** and the action is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: March 22,2006

Thomas J. McAvoy
Senior, U.S. District Judge